1

2

3

4

5    **UNITED STATES DISTRICT COURT**

6    EASTERN DISTRICT OF CALIFORNIA

7

8

     FERNANDO GASTELUM,                         Case No.  1:23-cv-00472-SKO
9
                    Plaintiff,
10                                              **FINDINGS AND RECOMMENDATIONS
                                                TO STRIKE PLAINTIFF'S DIVERSITY
11          v.                                  ALLEGATIONS AND DECLINE
                                                SUPPLEMENTAL JURISDICTION
12                                              OVER PLAINTIFF'S STATE LAW
                                                CLAIMS**
13   HIE RIVER PARK LLC, dba Holiday Inn
     Express Fresno Riverpark,                  (Docs. 7, 10)
14
                    Defendant.                  **14 DAY DEADLINE**
15
                                                Clerk to Assign District Judge
16
17   _____/

18                      **I.      INTRODUCTION**

19          On March 28, 2023, Plaintiff Fernando Gastelum ("Plaintiff"), proceeding *pro se* and *in*

20   *forma pauperis*, filed a complaint against Defendant Hie River Park LLC, doing business as Holiday

21   Inn Express Fresno Riverpark ("Defendant").  (Docs. 1, 4.)  The complaint alleges claims under the

22   American with Disabilities Act ("ADA"), California's Unruh Civil Rights Act ("Unruh Act"), and

23   California's Disabled Persons Act ("Disabled Persons Act").  (Doc. 1.)  These claims stem from

24   alleged barriers Plaintiff encountered (such as a lack of access to a passenger loading zone) while

25   lodging at Holiday Inn Express Riverpark.  (*Id.*)  Plaintiff seeks both injunctive relief and monetary

26   damages.  (*Id.*)  Defendant has not appeared in this action, and there is no indication that Defendant

27   has been served with the summons and complaint.

28          On May 23, 2023, the undersigned ordered Plaintiff to show cause why the Court should not

1   decline to exercise supplemental jurisdiction over his state law claims in light of the Ninth Circuit's

2   decisions in *Vo v. Choi*, 49 F.4th 1167 (9th Cir. 2022) and *Arroyo v. Rosas*, 19 F.4th 1202, 1209

3   (9th Cir. 2021) (Doc. 5).  *See also* 28 U.S.C. § 1367(c).  Plaintiff timely filed a response on June 8,

4   2023.  (Doc. 6.)  That same day, Plaintiff filed a First Amended Complaint ("FAC") raising the

5   same three claims and alleging diversity jurisdiction pursuant to 28 U.S.C. § 1332 and federal

6   question jurisdiction pursuant to 28 U.S.C. § 1331.  (Doc. 7.)

7       On June 22, 2023, the undersigned discharged the order to show cause and screened

8   Plaintiff's FAC.  (Doc. 8.)  Upon review of the operative complaint, the undersigned concluded that

9   the FAC stated a cognizable ADA claim, but failed to state cognizable claims under the Unruh Act

10   and the Disabled Persons Act over which this Court may assert jurisdiction.  (*Id*. at 2.)  Specifically,

11   the undersigned found that Plaintiff failed to sufficiently allege diversity jurisdiction as to his state

12   law claims.  (*Id*. at 9–13.)  The undersigned provided Plaintiff with the following three options as

13   to how to proceed: (1) file a Second Amended Complaint; (2) notify the Court in writing that he

14   wished to stand on the FAC; or (3) file a notice of voluntary dismissal.  (*Id*. at 13.)  Plaintiff filed a

15   notice of intent to stand on the FAC.  (Doc. 9.)

16       On August 7, 2023, the undersigned again ordered Plaintiff to show cause why the Court

17   should not decline to exercise supplemental jurisdiction over his state law claims as set forth in the

18   FAC.  (Doc. 10.)  Given Plaintiff's notice of intent to stand on his FAC (doc. 9), Plaintiff was

19   cautioned that the undersigned would recommend to the assigned District Judge that the diversity

20   allegations contained in the operative pleading be stricken pursuant to Federal Rule of Civil

21   Procedure 12(f) ("Rule 12(f)").  (Doc. 10 at 2 n.1.)  The undersigned explained that because Plaintiff

22   was proceeding with federal question jurisdiction based on his ADA claim, the order to show cause

23   regarding supplemental jurisdiction was necessary.  (*Id*.)  Plaintiff has not filed a response to the

24   order to show cause, and the time to do so has lapsed.  (*See* Docket.)

25       For the reasons discussed below, the undersigned shall recommend that Plaintiff's diversity

26   allegations be stricken pursuant to Rule 12(f).  The undersigned further recommends that

27   supplemental jurisdiction over Plaintiff's state law claims be declined and those claims be dismissed

28   without prejudice.

## II.        DISCUSSION

**A.        The Undersigned Recommends Striking Plaintiff's Diversity Allegations Pursuant to Rule 12(f)**

The Court, on its own motion, "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded." *Bradley-Aboyade v. Crozier*, No. 2:19-cv-01098-TLN-AC, 2021 WL 3472238, at *3 (E.D. Cal. Aug. 6, 2021) (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994)) (internal quotation marks omitted). "Impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Id.*

Here, upon screening Plaintiff's FAC, the undersigned found that Plaintiff failed to sufficiently allege diversity jurisdiction as to his state law claims. (*See* Doc. 8 at 9–13.) Plaintiff was then provided with an opportunity to file an amended complaint to substantiate the amount in controversy for purposes of diversity jurisdiction. (*Id.* at 12–13.) Plaintiff did not file an amended complaint, but instead filed a notice of intent to stand on the FAC. (Doc. 9.) Accordingly, in the second order to show cause relating to Plaintiff's FAC, Plaintiff was cautioned that the undersigned would recommend to the assigned District Judge that the diversity allegations contained in the operative pleading be stricken pursuant to Rule 12(f). (Doc. 10 at 2 n.1.) The undersigned also explained that because Plaintiff was proceeding with federal question jurisdiction based on his ADA claim, the order to show cause regarding supplemental jurisdiction was necessary. (*Id.*) Plaintiff did not file a response to the second order to show cause. (*See* Docket.)

Given Plaintiff's statement that he wishes to stand on the FAC, his failure to set forth a basis for diversity jurisdiction, and his lack of response to the second order to show cause, it appears Plaintiff intends to proceed with federal question jurisdiction based on his ADA claim. Accordingly, the undersigned recommends striking Plaintiff's diversity allegations in the FAC as immaterial and impertinent pursuant to Rule 12(f). *See Bradley-Aboyade*, 2021 WL 3472238, at *3.

**B.        The Undersigned Recommends Declining Supplemental Jurisdiction over Plaintiff's**

**State Law Claims**

      **1.**      **Legal Standard**

Under 28 U.S.C. § 1367(a), a court that has original jurisdiction over a civil action "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." The Ninth Circuit has concluded that ADA and Unruh Act claims that derive from a common nucleus of operative fact "form part of the 'same case or controversy' for purposes of § 1367(a)." *Arroyo*, 19 F.4th at 1209.

However, even where supplemental jurisdiction over a claim exists under § 1367(a), the Court may decline jurisdiction over the claim under § 1367(c) if:

    (1) the claim raises a novel or complex issue of State law,

    (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

    (3) the district court has dismissed all claims over which it has original jurisdiction, or

    (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c)(1)-(4).

Pertinent here, a court deciding whether to apply § 1367(c)(4) must make "a two-part inquiry." *Arroyo*, 19 F.4th at 1210. "First, the district court must articulate why the circumstances of the case are exceptional within the meaning of § 1367(c)(4)." *Id.* (citations and internal quotation marks omitted). "Second, in determining whether there are compelling reasons for declining jurisdiction in a given case, the court should consider what best serves the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine articulated in *Gibbs*." *Id.* (citations and internal quotation marks omitted).

After considering § 1367(c)(4) and California's requirements for bringing Unruh Act claims, "[n]umerous federal district courts across California have declined to exercise supplemental jurisdiction over Unruh Act . . . claims brought alongside ADA claims." *Rutherford v. Nuway Ins. Agency Inc.*, No. SACV 21-00576-CJC-JDE, 2021 WL 4572008, at *1 (C.D. Cal. Apr. 1, 2021). Underlying these decisions is "the recent confluence of several California-law rules [that] have

1    combined to create a highly unusual systemic impact on ADA-based Unruh Act cases that clearly

2    threatens to have a significant adverse impact on federal-state comity." *Arroyo*, 19 F.4th at 1211.

3         Congress adopted the ADA to address the discrimination encountered by persons with

4    disabilities, providing a private cause of action to seek injunctive, but not monetary, relief. *See*

5    *Arroyo*, 19 F.4th at 1205 (discussing background and relief available under the ADA).  The Unruh

6    Act likewise prohibits disability discrimination, containing a provision, Cal. Civ. Code § 51(f),

7    stating that a violation of the ADA also violates the Unruh Act.  However, unlike the ADA, the

8    Unruh Act allows a plaintiff to recover "up to a maximum of three times the amount of actual

9    damage but in no case less than four thousand dollars." Cal. Civ. Code § 52(a).

10        In response to perceived abuses of the Unruh Act, California has enacted requirements for

11   bringing such claims, which the Ninth Circuit has assumed, without deciding, "apply *only* in

12   California state court." *Vo*, 49 F.4th at 1170.  For example a provision was added (1) regarding the

13   contents of demand letters, Cal. Civ. Code § 55.31; (2) imposing heightened pleading requirements,

14   Cal. Civ. Code § 425.50(a); and (3) requiring an additional filing fee of $1,000 for so called "high-

15   frequency litigants," Cal. Gov't Code § 70616.5(b), *see* Cal. Civ. Code § 425.55(b) (defining a high-

16   frequency litigant to include "[a] plaintiff who has filed 10 or more complaints alleging a

17   construction-related accessibility violation within the 12-month period immediately preceding the

18   filing of the current complaint alleging a construction-related accessibility violation.").

19        These heightened pleading requirements apply to actions alleging a "construction-related

20   accessibility claim," which California law defines as "any civil claim in a civil action with respect

21   to a place of public accommodation, including but not limited to, a claim brought under Section 51,

22   54, 54.1, or 55, based wholly or in part on an alleged violation of any construction-related

23   accessibility standard." Cal. Civ. Code § 55.52(a)(1).  By enacting such restrictions, California has

24   expressed a "desire to limit the financial burdens California's businesses may face from claims for

25   statutory damages under the Unruh Act." *Arroyo*, 19 F.4th at 1209 (internal quotations omitted).

26   However, "Unruh Act plaintiffs have evaded these limits by filing in a federal forum in which [they]

27   can claim these state law damages in a manner inconsistent with the state law's requirements." *Id.*

28   at 1213 (internal quotation marks omitted).  Consequently, "the procedural strictures that California

1  put in place have been rendered largely toothless, because they can now be readily evaded." *Id.*

2  Recently, the Ninth Circuit provided substantial guidance on this issue in *Vo v. Choi* in

3  affirming a district court's order denying supplemental jurisdiction over an Unruh Act claim under

4  § 1367(c)(4). *Vo*, 49 F.4th at 1168.  In *Vo*, the district court declined supplemental jurisdiction over

5  the Unruh Act claim after giving the plaintiff the opportunity to respond and before addressing the

6  merits of the case. *Id.* at 1168–69.  In reviewing the district court's decision, the Ninth Circuit held

7  that the district court sufficiently explained why the circumstances of the case were exceptional

8  under § 1367(c)(4), agreeing with the district court that "it would not be 'fair' to defendants and 'an

9  affront to the comity between federal and state courts' to allow plaintiffs to evade California's

10  procedural requirements by bringing their claims in federal court." *Id.* at 1171.  The Court also

11  affirmed the district court's finding that the balance of the *Gibbs* values—economy, convenience,

12  fairness, and comity—provided compelling reasons to decline supplemental jurisdiction, stating that

13  "the district court [properly] analyzed Vo's situation under the *Gibbs* values and determined that the

14  values of fairness and comity favored not retaining jurisdiction over the claim." *Id.* at 1172.

15  Accordingly, "[g]iven these very real concerns, in addition to the deferential standard of review,

16  [the Ninth Circuit saw] no reason to hold that the district court abused its discretion in determining

17  there were compelling reasons to decline jurisdiction over the Unruh Act claim." *Id.*

18  **1.     Analysis**

19  a.     The Undersigned Finds that the Circumstances Here Are Exceptional

20  The Court begins with the first part of the two-step inquiry under § 1367(c)(4)—whether the

21  circumstances here are exceptional.  *Vo*, 49 F.4th at 1171.  California imposes additional limitations

22  on "high-frequency litigants," defined as:

23  A plaintiff who has filed 10 or more complaints alleging a construction-related
accessibility violation within the 12-month period immediately preceding the filing

24  of the current complaint alleging a construction-related accessibility violation.

25  Cal. Civ. Proc. Code § 425.55(b)(1).  "High-frequency litigants" are subject to a special filing fee

26  and further heightened pleading requirements.  *See* Cal. Gov. Code § 70616.5; Cal. Civ. Proc. Code

27  § 425.50(a)(4)(A).

28  Plaintiff's filings in this case do not include the number of complaints he filed alleging a

6

1   construction-related accessibility violation within the 12-month period immediately preceding the

2   filing of the complaint in this action.  As noted in the order to show cause (Doc. 10 at 3–4), according

3   to the filings with this Court, Plaintiff has filed at least 10 cases in the Eastern District within the

4   12-month period from the filing of his initial complaint in this case, and more than 25 cases in the

5   last two years.  *See Jacobsen v. Mims*, No. 1:13-CV-00256-SKO-HC, 2013 WL 1284242, at *2

6   (E.D. Cal. Mar. 28, 2013) ("The Court may take judicial notice of court records.").  Indeed, at least

7   two Eastern District courts have indicated Plaintiff appears to be a high-frequency litigant.  *See*

8   *Gastelum v. Cotton On USA, Inc.*, No. 1:22-cv-01194-SAB, Doc. 11 at 4; *Gastelum v. Best Buy,*

9   *Inc.*, No. 1:23-cv-00244-ADA-BAM, Doc. 4 at 3.  In any event, the Court need not determine

10  whether Plaintiff is in fact a high-frequency litigant.  *See Vo*, 49 F.4th at 1174.

11          If this Court were to exercise supplemental jurisdiction over Plaintiff's Unruh Act claim, the

12  "distinctive configuration of California-law rules—which pair a damages remedy with special

13  procedural requirements aimed at limiting suits by high-frequency litigants—would be rendered

14  ineffectual."  *Arroyo,* 19 F.4th at 1211.  Courts have recognized that California's heightened

15  pleading and filing requirements are not limited to accessibility related Unruh Act claims and apply

16  to other construction-related accessibility claims, such as claims brought under the Disabled Persons

17  Act.  *See, e.g., Gastelum v. TJX Companies, Inc.*, No. 21-cv-06714-VKD, 2023 WL 411345, at *10

18  n.5 (N.D. Cal. Jan. 25, 2023) ("In any event, California's heightened pleading requirement also

19  applies to the Disabled Persons Act."); *see also* Cal. Civ. Code § 55.52(a)(1) ("'Construction-related

20  accessibility claim' means any civil claim in a civil action with respect to a place of public

21  accommodation, including, but not limited to, a claim brought under Section 51, 54, 54.1, or 55 ...").

22          As discussed above, California has enacted various requirements that apply to claims

23  alleging a construction-related accessibility violation.  If the Court were to exercise jurisdiction over

24  Plaintiff's state law claims, Plaintiff would be permitted to avoid these requirements.  *See Arroyo*,

25  19 F.4th at 1213 (noting that potential evasion of California's requirements met exceptional-

26  circumstances prong of § 1367(c)(4)).  Such evasion would also undermine California's policy

27  interests in enforcing its requirements—providing monetary relief but limiting burdens on small

28  businesses and disincentivizing plaintiffs' attorneys from obtaining "monetary settlements at the

1  expense of forward-looking relief that might benefit the general public." *Id.*

2      By failing to respond to the operative order to show cause, Plaintiff offers no argument for

3  why such circumstances should not be deemed exceptional.  In any event, there is "little doubt that

4  the first prong [under § 1367(c)(4)] is satisfied here."  *Vo*, 49 F.4th at 1171.  Accordingly, the

5  undersigned finds that the circumstances in this case are exceptional within the meaning of

6  § 1367(c)(4). *See Garcia v. Maciel*, No. 21-cv-03743-JCS, 2022 WL 395316, at *2 (N.D. Cal. Feb.

7  9, 2022) (collecting cases).

8                    b.      There Are Compelling Reasons for Declining Supplemental Jurisdiction

9      Turning to the second part of the inquiry—whether there are other compelling reasons for

10  declining jurisdiction—the Court considers the *Gibbs* values of economy, convenience, fairness,

11  and comity. *Vo*, 49 F.4th at 1171.  This case is an early stage of the litigation—Defendant has not

12  appeared, and the merits of Plaintiff's claims have not yet been addressed.  *See Arroyo*, 19 F.4th at

13  1214 (noting that the *Gibbs* values did not support declining supplemental jurisdiction where the

14  case was at a "very late stage").  This is not a case "where it makes no sense to decline jurisdiction

15  . . . over a pendent state law claim that that court has effectively already decided." *Id.*  Notably,

16  Plaintiff makes no argument that the stage of this case warrants exercising jurisdiction.

17      In addition, allowing high-frequency litigants to evade California's limitations on

18  construction-related accessibility claims places tremendous strain on the federal courts.  As noted

19  above, Plaintiff has filed at least 10 cases in the Eastern District within the 12-month period from

20  the filing of his initial complaint in this case, and more than 25 cases in the last two years.  This

21  high-frequency filing suggests that it is precisely because the federal courts have not adopted

22  California's limitations on such claims that federal courts have become the preferred forum for such

23  claims. *See generally Garibay v. Rodriguez*, No. CV 18-9187 PA (AFMx), 2019 WL 5204294, at

24  *4 (C.D. Cal. Aug. 27, 2019) ("Indeed, those reasons, if true at all, do not explain why nearly 9

25  times more construction-related accessibility actions are being filed in the Central District in 2019

26  than were filed in 2013.")

27      Permitting federal courts "to become an escape hatch" that allows plaintiffs to pursue such

28  claims offends the comity between state and federal courts.  Declining to exercise supplemental

1   jurisdiction over the state law claims early in the litigation preserves federal judicial resources for

2   the consideration of federal claims, while still allowing plaintiffs to pursue their state law claims in

3   state court.  *See e.g.*, *Brooke v. Sarodia Suncity LLC*, No. EDCV 22-1374 JGB (SPx), 2022 WL

4   17363913, at *5 (C.D. Cal. Nov. 3, 2022) ("Continuing to exercise supplemental jurisdiction in

5   these extraordinary circumstances would unnecessarily force this Court to expend resources to

6   resolve state law claims for relatively modest statutory damages and attorneys' fees even after the

7   federal claim is moot.").  In light of the above discussion of California's requirements for Unruh

8   Act claims, it would not be fair, nor would comity be served, to allow Plaintiff's state law claims to

9   proceed without the state court being able to enforce its policy interests as reflected in its various

10  procedural requirements.  *Arroyo*, 19 F.4th at 1213 (noting "comity-based concerns that California's

11  policy objectives in this area were being wholly thwarted" by plaintiffs being able to bring Unruh

12  Act claims in federal court); *see also Gastelum v. Best Buy, Inc.*, No. 1:23-cv-00244-ADA-BAM,

13  2023 WL 2588009, at *2 (E.D. Cal. Mar. 21, 2023) ("It is not, under the *Gibbs* factors, 'fair' to

14  defendants that a plaintiff may pursue construction-related accessibility claims in this Court while

15  evading the limitations California state law has imposed on such claims.").

16      The fact that the litigation could prove duplicative or increase costs does not, in light of the

17  other considerations, warrant retaining jurisdiction.  As one court has concluded, "if plaintiff

18  legitimately seeks to litigate this action in a single forum, plaintiff may dismiss this action and refile

19  it in a state court in accordance with the requirements California has imposed on such actions."

20  *Garibay*, 2019 WL 5204294, at *6.  Moreover, it is California's prerogative to impose a heightened

21  filing fee for high-frequency litigants in an effort to curb abuses of the Unruh Act at the risk of the

22  fee being ultimately paid by defendants.  It would undermine comity and fairness were Plaintiff

23  permitted to proceed with his state law claims in light of California's policy concerns.

24      Accordingly, considering the two-step inquiry under § 1367(c)(4), the undersigned

25  concludes that this case presents "exceptional circumstances" such that "there are other compelling

26  reasons for declining [supplemental] jurisdiction" over Plaintiff's state law claims.

27

28

### III.   ORDER AND RECOMMENDATIONS

For the reasons given above, IT IS RECOMMENDED as follows:

1.   The diversity allegations contained in Plaintiff's FAC (Doc. 7) be STRICKEN pursuant to Rule 12(f);

2.   Pursuant to 28 U.S.C. § 1367(c)(4) and *Vo v. Choi*, 49 F.4th 1167 (9th Cir. 2022), the Court DECLINE to exercise supplemental jurisdiction over Plaintiff's state law claims; and

3.   Plaintiff's state law claims be DISMISSED WITHOUT PREJUDICE pursuant to 28 U.S.C. § 1367(c)(4).

The Clerk of Court is DIRECTED to assign a District Judge to this action.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  **Within fourteen (14) days** after being served with these findings and recommendations, any party may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **August 29, 2023**              */s/ Sheila K. Oberto*
                                UNITED STATES MAGISTRATE JUDGE

10